```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

JAVIER P. MARQUEZ,            }
                              }
     Plaintiff,               }
                              }       CIVIL ACTION NO.
v.                            }       2:12-CV-00492-WMA
                              }
TYSON FOODS, INC.,            }
                              }
          Defendant.          }
```

## MEMORANDUM OPINION

Before the court is the motion of defendant, Tyson Foods, Inc. ("Tyson"), for summary judgment as to all remaining claims brought by plaintiff, Javier P. Marquez ("Marquez"). Doc. 21. Marquez brought suit against Tyson for race and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e *et seq.*, fraud, outrage, and defamation. Following Tyson's earlier motion to dismiss Marquez's fraud, outrage, and defamation claims, this court dismissed Marquez's fraud and defamation claims on September 26, 2012. For the reasons stated below, Tyson's motion for summary judgment will be granted as to the remaining claims.

## Background[1]

---

[1] Marquez is the non-movant. Rule 56, F.R.Civ.P., requires that all admissible evidence, together with all reasonable inferences therefrom, be viewed in the light most favorable to him. However, Marquez's brief does not present facts, and Marquez does not submit any evidence. Thus it is difficult, if not impossible, for the court to view the facts more favorably to plaintiff than defendant presents them.

1

Tyson is a producer and marketer of protein products, including beef, pork and chicken. Marquez, who is Hispanic, was an employee at Tyson's processing plant in Blountsville, Alabama, from February 11, 2008, until he was terminated on December 22, 2010. He was terminated after an incident that took place on December 16, 2010.

On December 16, 2010, Marquez was in the break room of the Tyson processing plant when he found a pair of earplugs. When he left to return to his work station, he draped the string over an air conditioning fixture in the form of a noose and left the room. Robert Herndon ("Herndon"), who was also in the break room, reported to his supervisor, Yolonda Cook ("Cook"), that Marquez had hung the string in the shape of a noose. Cook reported what she had been told to Jan Casey ("Casey"), the Human Resources Manager.

Casey summoned Marquez, and ,with the help of a translator, they interviewed Marquez about the incident. They asked Marquez if he had hung the earplugs in the break room.  Marquez replied that he had but that he thought "nothing of it." He maintains that although he did make a loop with the earplugs, he did not intend to create a noose, and he did not know the offensive significance of a noose. At the meeting he signed a statement that said

> I was just sitting there playing with the earplug string. I just started making a knoose [sic]. If I knew it was disrespectful I would not have made it. I hung it on the air vent. I didn't say a name or anything. I just hung it up.

2

Following the interview, Tyson suspended Marquez for 3 days. When he returned to work on December 22, he was fired and told that it was a result of the noose incident.

Marquez subsequently filed a claim for unemployment benefits with the Alabama Department of Industrial Relations ("ADIR") Unemployment Compensation Division. He was initially awarded unemployment compensation but Tyson appealed the decision, and the ADIR determined that he was not due unemployment benefits, finding he had been "discharged for misconduct." Marquez appealed this denial to the Circuit Court of Blount County, but that court entered summary judgment in favor of ADIR and Tyson. He then appealed the summary judgment to the Alabama Court of Civil Appeals, which affirmed the lower court.

## Analysis

Title VII

Title VII precludes employers from discharging "any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1); *Maynard v. Bd. of Regents,* 342 F.3d 1281, 1288 (11th Cir. 2003). Under the applicable framework, Marquez may establish unlawful discrimination by presenting direct or circumstantial evidence. "Direct evidence of discrimination is evidence, that, if believed, proves the

3

existence of a fact in issue without inference or presumption." *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (internal quotations and citation omitted). Evidence that merely suggests a discriminatory motive, is, by definition, circumstantial evidence. *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997). Marquez does not offer any direct evidence of discrimination. Thus, the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is applied to his case. Under this framework, Marquez must first establish a *prima facie* case of discrimination, which, if established, creates a presumption of discrimination. In order to make a *prima facie* case, Marquez must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class. *Maynard*, 342 F.3d at 1289. Because this is at the summary judgment stage, Marquez is only required to show that there is a question of material fact as to each of these elements.

Tyson does not dispute the existence of the first three elements. However, Tyson does argue that Marquez has not satisfied and can not satisfy the fourth element. Tyson focuses on the fourth element's requirement that plaintiff point to a more

4

favorably treated similarly-situated employee outside his protected group and ignores the theoretical possibility that Marquez can establish a *prima facie* case by demonstrating that he was replaced by someone outside of his protected group. Tyson undoubtedly counts on the court's perception that there is no evidence whatsover to reflect that Marquez was replaced by a non-Hispanic. Tyson succeeds because Marquez fails to respond to Tyson's argument regarding a similarly-situated employee, as well as fails to offer evidence regarding his replacement. Although the evidence is viewed in the light most favorable to the plaintiff, Marquez has not given the court any evidence to construe in his favor. The burden is on Marquez to do more than to roll over and play dead. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Although the wisdom of Tyson's decision to terminate Marquez is not a matter for the court under Title VII consideration, it is understandable why Tyson would want jealously to guard itself against any claim that it tolerates the display of a racist symbol in the workplace. Tyson was not required to overlook Marquez's provocative action just because he says he was unaware of the significance of the noose. Most employers in today's world are skittish about nooses.

Marquez has failed to demonstrate that there is question of fact *prima facie* case. Therefore, Tyson's summary judgment will be granted as to the claims of race and national origin

5

discrimination.

<u>Outrage</u>

The tort of outrage is meant to give a plaintiff relief when a defendant has engaged in "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980). Outrage is a very limited cause of action that the Alabama Supreme Court has only recognized a few times. *See Little v. Robinson,* 72 So.3d 1173 (Ala. 2011). Tyson argues that none of Marquez's allegations

> "come[] close to any of these other contexts in which the court has determined that the acts of the defendants were 'beyond all possible bounds of decency,' 'atrocious' and 'utterly intolerable in a civilized society.'"

Marquez makes no real effort to respond to Tyson's argument. The only part of Marquez's brief that even comes close to an argument regarding the outrage claim is as follows:

> The facts in the case indicate that Mr. Del Carmen and Ms. Casey took advantage of the Plaintiff's lack of proficiency with the English language and used that as a basis to stain him with the degrading symbol of racism and intolerance even though they knew full well that the Plaintiff had no racist or intolerant intent. Those actions constitute discriminatory conduct towards the Plaintiff based on his national origin and certainly fall outside the bounds of decency."

Although Marquez does not even identify this as an act of

6

outrageous conduct, the court will assume that is what he was getting at when he said "fall outside the bounds of decency."

When he says "the facts indicate," Marquez does not tell the court what the "facts" are that he is talking about. He has not responded to Tyson's arguments, and has not cited any law to support his outrage claim. Plaintiff has not even given the court enough information with which to form an argument if it wanted to take up the mantle of advocate.

**Conclusion**

For the above stated reasons, Tyson's motion for summary judgment will be granted by separate order.

DONE this 31st day of July, 2013.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE